N. MARK KLAPPENBACH, Judge
Appellant Charles Randall Davis was charged with the first-degree murder of Jeff Foster. A Poinsett County jury convicted Davis of the lesser-included offense of manslaughter, and he was sentenced to ten years in prison. On appeal, Davis argues that the circuit court abused its discretion in admitting the testimony of three witnesses over his hearsay and confrontation-clause objections. We affirm.
A pretrial hearing was held regarding the admissibility of the testimony of Bennie Adams, Kathleen Wilson, and Ira Vail. Adams testified that about a week before Foster's death, Foster called and said that Davis was threatening to kill him, that he was "scared to death," and that if he ended up dead, Adams should have the police investigate Davis. Adams said that Foster was crying during this conversation. Kathleen Wilson testified that about a week or two before his death, Foster came to her home and told her that Davis had choked him, put a knife to his throat, and thrown him out of Davis's trailer. Wilson said that this conversation occurred right after the incident, that Foster acted kind of nervous, and that Foster told her he was scared. Wilson testified that Foster told her on another occasion that Davis had threatened to kill him during a disagreement over their dogs. Vail was not present at the pretrial hearing, but the State expected him to testify that shortly before Foster's death, Foster told him that Davis had recently threatened to kill him and had put a knife to his throat.
The State argued that it intended to offer these statements to show Davis's motive and intent when he shot Foster. The parties disputed whether the statements were testimonial and therefore barred by the Sixth Amendment and whether they were admissible under Arkansas Rule of Evidence 803(3), an exception to the hearsay rule for a statement of the declarant's then existing state of mind. The court ruled that the statements were not testimonial and that they were admissible under Rule 803(3).
At the jury trial, Deputy Wilbur Hewitt of the Poinsett County Sheriff's Department testified that he responded to a report that someone heard a gunshot from the camper trailer where Davis lived. When Hewitt arrived at the scene he saw a body lying near the doorway and Davis standing inside the trailer. Hewitt instructed Davis to come out, and Davis made the comment, "I don't think it will do me any good to say this, but it was an accident." Hewitt said that Davis cooperated with him, and he did not suspect that Davis had been drinking. Investigator Ron Martin testified that Foster's body was wrapped in a comforter and that there were tracks through the blood on the floor. He saw a considerable amount of blood in the shower and a bloody rag, mop, and bucket. A single-shot .410 shotgun was found in a closed case on the floor.
Martin waited to interview Davis until the next afternoon because his blood-alcohol content was tested at 0.17 percent after his arrest. Davis told him that he and *894 Foster had been drinking in the camper trailer when Foster began raising his voice and being "obnoxious." Davis said that he was afraid of Foster and wanted him to leave, but Foster was not leaving fast enough. Davis said that he started poking Foster with the shotgun, trying to push him out the door, and the gun "just went off." Davis claimed that he did not know the gun was loaded and that he did not remember cocking the hammer or pulling the trigger. Davis said that he wrapped Foster's body in the comforter and planned to take it to Foster's trailer. He told Martin that he was cleaning up because he was scared and did not know what to do, but he knew he should have called 911 instead.
Dr. Frank Peretti testified that Foster died as the result of a single gunshot wound to the neck and head. Dr. Peretti said that the entrance wound was situated in the midline of the back of Foster's neck and that it was a contact wound, meaning the muzzle of the gun was pressed firmly against the skin when it discharged. Dr. Peretti said that Foster's blood showed that he had had "quite a bit to drink." A forensic firearm-and-toolmark examiner from the Arkansas State Crime Lab testified that the shotgun is designed to discharge only after the hammer has been pulled back and the trigger has been pulled, and it functioned as designed when she test-fired it.
Ira Vail testified that on the day before Foster's death, Foster was upset about something and was "kind of crying." When Vail asked what was wrong, Foster told him that Davis had threatened his life approximately one week earlier and then had put a knife to his throat and threatened to kill him the night before.[1] Adams and Wilson testified about the threats Foster relayed to them.[2] All three of these witnesses were questioned on cross-examination about the fact that Foster did not stay away from Davis after the alleged threats. Davis rested without putting on a case, and the jury found him guilty of the lesser-included offense of manslaughter.
Davis first argues that Foster's statements to Adams, Wilson, and Vail were hearsay and not admissible under Rule 803(3). Arkansas Rule of Evidence 803(3) provides that the following is not excluded by the hearsay rule:
Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
We review evidentiary rulings under an abuse-of-discretion standard, and we do not reverse absent a manifest abuse of that discretion and a showing of prejudice. Dickey v. State , 2016 Ark. 66, 483 S.W.3d 287. Davis argues that Foster's statements to the witnesses that Davis had threatened him were inadmissible under Rule 803(3) because they were statements of Foster's memory of past events, not his then existing emotion or state of mind. Davis contends *895 that he was prejudiced by these witnesses' testimony because it was the only evidence that he had threatened Foster and was a "centerpiece" of the prosecution. We agree with the State, however, that even if the circuit court erred in admitting this testimony, any error was harmless.
An error in the admission of hearsay evidence does not automatically result in a reversal if the error was harmless. Proctor v. State , 349 Ark. 648, 79 S.W.3d 370 (2002). When evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm. Id. To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence. Rodriguez v. State , 372 Ark. 335, 276 S.W.3d 208 (2008). Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice by the defendant. Id.
As the jury was instructed here, a person commits manslaughter if the person recklessly causes the death of another person. Ark. Code Ann. § 5-10-104(a)(3) (Repl. 2013). "A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur." Ark. Code Ann. § 5-2-202(3)(A) (Repl. 2013). "The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Ark. Code Ann. § 5-2-202(3)(B).
As the State notes, it is undisputed that Davis shot and killed Foster. Davis told police that he was poking Foster with the shotgun when it fired. The evidence showed that Davis, while intoxicated, was pressing a loaded shotgun firmly against the back of Foster's neck when the shotgun discharged and that the shotgun discharges when the hammer has been pulled back and the trigger is pulled. This evidence is overwhelming proof that, at a minimum, Davis recklessly caused Foster's death. Although the testimony of Adams, Wilson, and Vail provided evidence that Davis intended to kill Foster, the jury acquitted him of causing Foster's death either with the purpose to do so or knowingly under circumstances manifesting extreme indifference to the value of human life. We hold that any error in the admission of the testimony of Adams, Wilson, and Vail was harmless as to the offense of manslaughter.
Davis also argues that the circuit court violated his Sixth Amendment right to confront witnesses against him by admitting Adams's testimony that Foster said that Davis had threatened to kill him and to have the police investigate Davis if Foster ended up dead. A Confrontation Clause violation is subject to harmless-error analysis, meaning harmless beyond a reasonable doubt. Hughes v. State , 2012 Ark. App. 586. Whether denial of the right to confront a witness is harmless error depends on a host of factors, including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. Id.
Davis argues that this error was not harmless because Adams's testimony was unique, and the statement regarding having the police investigate Davis was prophetic. We disagree. It was undisputed that Davis caused Foster's death; the only issue at trial was whether Davis did so purposely, knowingly, or recklessly. Testimony *896 that Foster predicted his death would be caused by Davis could be important in proving that Davis intentionally killed Foster, but here the jury found that Davis acted only recklessly. Even without Adams's testimony, the evidence of Davis's guilt as to manslaughter is overwhelming and renders any error in permitting the testimony harmless beyond a reasonable doubt. We affirm the conviction.
Affirmed.
Gladwin and Brown, JJ., agree.

Vail testified that his conversation with Foster occurred on Thursday and that Foster was killed the next day. However, the record reflects that Foster was killed on a Saturday.

Unlike his testimony at the pretrial hearing, Adams did not testify at trial that Foster "said he was scared to death." Wilson's testimony at trial did not include her earlier testimony that Foster had told her about the knife incident right after it happened and that Foster had told her that he was "scared."